Robert J. FRITZ, Plaintiff-Appellant,

v.

**AMERICAN HOME SHIELD CORPORATION, et al.,** Defendants-Appellees.

No. 83–3740.

United States Court of Appeals, Eleventh Circuit.

Jan. 28, 1985.

Francis E. Pierce, III, Orlando, Fla., for plaintiff-appellant.

Alan B. Vlcek, Jacksonville, Fla., for defendants-appellees.

Before RONEY and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.

RONEY, Circuit Judge:

Seeking to invoke the diversity jurisdiction of the federal courts, Robert J. Fritz, a Florida resident, brought this breach-of-contract action against three corporate defendants, two designated as Delaware corporations with their principal place of business in California, and American Home Shield of Florida, Inc. ("AHS of Florida"), designated as a California corporation. When it developed that the latter corporation was incorporated under Florida law, the district court, on motion, dismissed the suit for lack of complete diversity among the parties. On appeal, Fritz argues that the state of incorporation should not control because the Florida corporation was the alter ego of its non-Florida citizen parent corporation, defendant American Home Shield Corporation ("AHSC"), whose California citizenship should be imputed to it. This novel argument has no merit under the clear statutory language and well-settled case law. We affirm.

One of the oldest and most elementary propositions of federal law is the requirement of complete diversity of citizenship between all defendants and all plaintiffs under 28 U.S.C.A. § 1332 and its predecessors. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *see also Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). Congress has provided two possible places of "citizenship" for corporations:

> For purposes of [section 1332], a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . .

28 U.S.C.A. § 1332(c). Thus, the statute furnishes a dual base for citizenship: place of incorporation, and principal place of business. Determining a corporation's principal place of business may require a complex analysis of business relationships among a hierarchy of corporate entities, an inquiry sometimes necessitating the use of an alter ego theory. *See, e.g., de Walker v. Pueblo International, Inc.*, 569 F.2d 1169 (1st Cir.1978); *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140 (3d Cir.1972); *Coles v. Humble Oil and Refining Co.*, 348 F.Supp. 1240 (S.D.Tex.1972); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3625, at 635–36 (2d ed. 1984).

Fritz would have the courts use the alter ego analysis to deprive the statute of its clear import to make the state of incorporation a place of citizenship for diversity purposes. Fritz cites no cases which consider an alter ego theory in determining a corporation's state of incorporation. Although he contends that *Coles v. Humble Oil and Refining Co.* does not distinguish alter ego principal place of business from alter ego state of incorporation in speaking of "alter ego citizenship," 348 F.Supp. at 1243, a reading of that case clearly shows that the court was discussing the alter ego theory in determining a corporation's principal place of business. *Id.* at 1241–43. The fact that a court may juxtapose the phrase "alter ego" and the word "citizenship" in analyzing the principal place of business issue, *see, e.g., Burnside v. Sanders Associates, Inc.*, 507 F.Supp. 165, 166 (N.D.Tex.1980), *aff'd*, 643 F.2d 389 (5th Cir.1981), furnishes no support for plaintiff's position.

Plaintiff misses the point of the alter ego analysis. When used, its purpose is to carry out the intent of the statute to endow a corporation with citizenship at its principal place of business. The problem there sought to be solved is to determine as a fact where, indeed, the principal place of business is. There is no such difficulty in determining the place of incorporation. Determining the state of incorporation is a relatively simple matter, usually requiring a mere check of the public records filed with a state government office. Once that fact is established, there is no need to go further in order to comply with the clear intent of the statute.

We therefore hold that for diversity purposes, the requirement that "a corporation shall be deemed a citizen of any State by which it has been incorporated" refers to the state in which the appropriate regulatory agency has issued a certificate of incorporation or other legal document signifying that the corporation has been properly established pursuant to that state's law, and that no further inquiry is appropriate. Since the defendant corporation is incorporated only in Florida, we need not address the so-called "forum doctrine," which for purposes of diversity jurisdiction treats a corporation incorporated in more than one state as if it were incorporated only in the forum state. *See generally,* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3626 (2d ed. 1984) (discussing cases upholding and abolishing doctrine since Congress amended 28 U.S.C. § 1332(c) in 1958).

■ Fritz also contends that the district court abused its discretion by not dismissing the nondiverse party pursuant to Fed.R.Civ.P. 21, which permits the district court to drop a party "by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Courts have employed Rule 21 to preserve diversity jurisdiction by dropping a nondiverse party not indispensable to the action under Fed.R.Civ.P. 19. *See* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1685 (1972). This Court has noted that the district court generally has discretion to determine whether to allow dropping of parties, but that where a district court "refuses to allow a party to be dropped (when joinder of that party destroys diversity) and bases the refusal upon the legal misconception that the cause of action cannot proceed without that party," the district court has committed an abuse of discretion. *Anderson v. Moorer,* 372 F.2d 747, 750 n. 4 (5th Cir.1967).

There is some dispute here as to when, if ever, Fritz first sought to have the district court drop AHS of Florida as a party to the lawsuit. He contends that he requested the district court to drop AHS of Florida if

the court ruled adversely to him on the alter ego theory as early as seven months before the court dismissed the suit on November 4, 1983. Defendants respond, however, that Fritz did not suggest dismissal of AHS of Florida until November 14, 1983, after dismissal of the suit, and only then as an afterthought appended to a document styled "Motion for Clarification." This motion was denied by the district court on December 6, 1983.

A review of the record reveals that Fritz never presented a formal motion to dismiss AHS of Florida under Rule 21. On April 6, 1983, plaintiff filed a preliminary response to defendant's suggestion of lack of subject matter jurisdiction setting forth his alter ego theory, requesting full and complete discovery, and concluding with the statement that "if after discovery, this Court makes the factual determination [that] AHS of Florida is not the alter ego of AHSC, Plaintiff should be given leave under Rule 21, Federal Rules of Civil Procedure, to drop AHS of Florida as a party defendant." Plaintiff went on to stress that he "should not be compelled to drop AHS of Florida as a party, or have this court dismiss AHS of Florida as a party, before that determination is made." Extensive discovery on the issue of subject matter jurisdiction followed over the next six months, often over defendants' objections that plaintiff was abusing the discovery process, until the district court stayed all discovery following an oral hearing on the jurisdiction question on October 21, 1983. There is no indication that plaintiff moved to drop AHS of Florida at the hearing. The district court subsequently dismissed the action on November 4, 1983. Following that, the November 14 "Motion for Clarification" was the first instance in which Fritz presented the district court with the substance of a Rule 21 motion free of conditions as to when it could be granted. Consequently, we agree with defendants that Fritz did not raise the alternative course of dismissing the nondiverse party until November 14.

In its December 6 order denying the November 14 motion, the district court made no mention of Fritz's suggestion to dismiss AHS of Florida from the action. This omission is perhaps attributable to the fact that Fritz apparently never requested the court to determine that AHS of Florida was not an indispensable party to the action under Rule 19, a finding that must be made before a Rule 21 dismissal of a nondiverse party is appropriate. *See Ralli-Coney, Inc. v. Gates,* 528 F.2d 572, 575 (5th Cir. 1976).

 The first mention of "indispensability" of AHS of Florida was not made until November 23, 1983, two weeks after dismissal of the action, when it was raised by defendants. We hold that the district court did not abuse its discretion in denying Fritz's motion filed a year after commencement of the action, seven months after defendants' suggestion of lack of subject matter jurisdiction, and two weeks after the district court dismissed the action.

The propriety of this decision is buttressed by our conclusion that this lawsuit should probably not proceed in federal court without AHS of Florida. Rule 19(b) directs the court to consider the prejudice to all parties caused by the party's absence, the extent to which the prejudice can be lessened or avoided, the adequacy of a judgment rendered in the party's absence, and the opportunity for the plaintiff to obtain an adequate remedy if the action is dismissed. Although the contract in question was between plaintiff and AHSC, plaintiff's complaint alleged that AHS of Florida was part of AHSC's overall plan to market home warranty plans in Florida, and that the contract and plan arose out of a series of common transactions and occurrences. Plaintiff's unflagging efforts to keep AHS of Florida in this litigation indicate that he perceived that a judgment against only the other corporate defendants would prejudice his interests. We here simply note counsel's representation

at oral argument on October 29, 1984, that this same action was scheduled for trial in state court on December 10, 1984.

Although the district court had discretion under Rule 21 to dismiss the nondiverse party on its own motion, there is no error here in the failure of the court to drop AHS of Florida on its own motion. *See Ray v. Bird & Son & Asset Realization Co.,* 519 F.2d 1081, 1082–83 (5th Cir.1975).

Defendants in this action assert that this appeal was groundless and frivolous and that they are entitled to attorney fees and double costs under Fed.R.App.P. 38 and 28 U.S.C.A. § 1912. Inasmuch as plaintiff's "alter ego" argument is novel and defendants concede that they can cite no court decision contrary to plaintiff's position, we hold that the appeal was made in good faith, and reject defendants' suggestion that we assess attorney fees and double costs against plaintiff.

AFFIRMED.