# NEWMAN-GREEN, INC. *v.* ALFONZO-LARRAIN ET AL.

No. 88–774.   Argued April 24, 1989—Decided June 12, 1989

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which SCALIA, J., joined, *post*, p. 839.

*Phil C. Neal* argued the cause for petitioner. With him on the briefs were *Rowe W. Snider* and *Michael D. Sher.*

*Frank K. Heap* argued the cause for respondents. With him on the brief were *Charles G. Albert* and *William L. Barr, Jr.*

JUSTICE MARSHALL delivered the opinion of the Court.

We decide today that a court of appeals may grant a motion to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction.

I

Petitioner Newman-Green, Inc., an Illinois corporation, brought this state-law contract action in District Court against a Venezuelan corporation, four Venezuelan citizens, and William L. Bettison, a United States citizen domiciled in Caracas, Venezuela. Newman-Green's complaint alleged that the Venezuelan corporation had breached a licensing agreement, and that the individual defendants, joint and several guarantors of royalty payments due under the agreement, owed money to Newman-Green. Several years of discovery and pretrial motions followed. The District Court ultimately granted partial summary judgment for the guarantors and partial summary judgment for Newman-Green. 590 F. Supp. 1083 (ND Ill. 1984). Only Newman-Green appealed.

At oral argument before a panel of the Seventh Circuit Court of Appeals, Judge Easterbrook inquired as to the statutory basis for diversity jurisdiction, an issue which had not been previously raised either by counsel or by the District Court Judge. In its complaint, Newman-Green had invoked 28 U. S. C. § 1332(a)(3), which confers jurisdiction in the District Court when a citizen of one State sues both aliens and citizens of a State (or States) different from the plaintiff's. In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State. See *Robertson* v. *Cease*, 97 U. S. 646, 648–649 (1878); *Brown* v. *Keene*, 8 Pet. 112, 115 (1834). The problem in this case is that Bettison, although a United States citizen, has no domicile in any State. He is therefore "stateless" for purposes of § 1332(a)(3). Subsection 1332(a)(2), which confers jurisdiction in the District Court when a citizen of a State sues aliens only, also could not be satisfied because Bettison is a United States citizen.

When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal. *Strawbridge* v. *Curtiss*, 3 Cranch 267 (1806).[1]  Here, Bettison's "stateless" status destroyed complete diversity under § 1332(a)(3), and his United States citizenship destroyed complete diversity under § 1332(a)(2).   Instead of dismissing the case, however, the Court of Appeals panel granted Newman-Green's motion, which it had invited, to amend the complaint to drop Bettison as a party, thereby producing complete diversity under § 1332(a)(2).   832 F. 2d 417 (1987).   The panel, in an opinion by Judge Easterbrook, relied both on 28 U. S. C. § 1653 and on Rule 21 of the Federal Rules of Civil Procedure as sources of its authority to grant this motion.   The panel noted that, because the guarantors are jointly and severally liable, Bettison is not an indispensable party and dismissing him would not prejudice the remaining guarantors.   832 F. 2d, at 420, citing Fed. Rule Civ. Proc. 19(b).   The panel then proceeded to the merits of the case, ruling in Newman-Green's favor in large part but remanding to allow the District Court to quantify damages and to resolve certain minor issues.[2]

The Court of Appeals granted the remaining guarantors' motion for rehearing en banc and reversed the panel decision. 854 F. 2d 916 (1988).   Writing for the en banc majority, Judge Posner concluded that neither § 1653 nor Rule 21 empowers appellate courts to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction.   The court

---

[1] This complete diversity requirement is based on the diversity statute, not Article III of the Constitution.   *State Farm Fire & Casualty Co.* v. *Tashire*, 386 U. S. 523, 530–531 (1967).

[2] The panel's merits determination has no bearing on the jurisdictional question presently before us.   We note nonetheless that the panel decision, combined with the partial summary judgment granted Newman-Green in the District Court, provided the guarantors with a strong incentive to have the case dismissed for want of jurisdiction.

did not, however, order the dismissal of the lawsuit. Recognizing that Rule 21 permits district courts to drop a dispensable nondiverse party, the court remanded the case to the District Court for it to determine whether it would be prudent to drop Bettison from the litigation. Judge Easterbrook, joined by the other two members of the original panel, wrote a dissenting opinion in which he elaborated on the panel opinion. *Id.*, at 927.

Unlike the Seventh Circuit, the Courts of Appeals for the Second, Third, Ninth, and District of Columbia Circuits have held that appellate courts have the power to dismiss jurisdictional spoilers like Bettison.[3] We granted Newman-Green's petition for certiorari in order to resolve this conflict, 488 U. S. 1003 (1989), and now reverse.

## II

The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed. See, *e. g., Smith* v. *Sperling*, 354 U. S. 91, 93, n. 1 (1957). Like most general principles, however, this one is susceptible to exceptions, and the two that are potentially applicable here are reflected in 28 U. S. C. § 1653 and Rule 21 of the Federal Rules of Civil Procedure. We discuss each potential exception in turn.

## A

Title 28 U. S. C. § 1653, enacted as part of the revision of the Judicial Code in 1948, provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." At first blush, the language of this pro-

---

[3] See, *e. g., Long* v. *District of Columbia*, 261 U. S. App. D. C. 1, 8–9, 820 F. 2d 409, 416–417 (1987); *Continental Airlines, Inc.* v. *Goodyear Tire & Rubber Co.*, 819 F. 2d 1519, 1523, and n. 3 (CA9 1987); *Caspary* v. *Louisiana Land & Exploration Co.*, 725 F. 2d 189, 191–192 (CA2 1984) *(per curiam); Underwood* v. *Maloney*, 256 F. 2d 334, 339 (CA3), cert. denied, 358 U. S. 864 (1958); cf. *Reed* v. *Robilio*, 376 F. 2d 392, 394 (CA6 1967).

vision appears to cover the situation here, where the complaint is amended to drop a nondiverse party in order to preserve statutory jurisdiction. But § 1653 speaks of amending *"allegations* of jurisdiction," which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves. Under this reading of the statute, which we believe is correct, § 1653 would apply if Bettison were, in fact, domiciled in a State other than Illinois or was, in fact, not a United States citizen, but the complaint did not so allege. It does not apply to the instant situation, where diversity jurisdiction does not, in fact, exist.

This interpretation of § 1653 is consistent with the language of its predecessor statute, enacted in 1915, which expressly limited jurisdictional amendments to cases in which diversity jurisdiction "in fact existed at the time the suit was brought or removed, though defectively alleged." § 274(c), Act of Mar. 3, 1915, 38 Stat. 956, 28 U. S. C. § 399 (1946 ed.). There is nothing in the 1948 legislative history to indicate that, in changing the wording of this statute, Congress intended to abandon the limitation just quoted. On the contrary, the only legislative guide available—the Revision Note to § 1653—explains that the predecessor statute was changed solely to expand the power to cure defective allegations of jurisdiction from diversity cases to all cases. Historical and Revision Notes to 28 U. S. C. § 1653. Other than that, "[c]hanges were made in phraseology." *Ibid.* Surely a change that would empower federal courts to amend a complaint so as to produce jurisdiction where none actually existed before is much more than a change in phraseology.[4]

---

[4] Although Revision Notes are not conclusive evidence of congressional intent, we have previously stated that no change in law should be presumed from the 1948 revision of the Judicial Code "unless an intent to make such changes is clearly expressed." *Fourco Glass Co.* v. *Transmirra Products Corp.*, 353 U. S. 222, 227 (1957). No such intent is clearly expressed with regard to § 1653.

Furthermore, every Court of Appeals that has considered the scope of § 1653 has held that it allows appellate courts to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts.[5] We decline to reject this long-standing interpretation of the statute.

## B·

We turn next to the other source of authority discussed by the Court of Appeals, Rule 21 of the Federal Rules of Civil Procedure, which provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." As both the en banc majority and dissent recognized below, it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.[6] Although the Federal Rules of Civil Procedure strictly apply only in the district courts, Fed. Rule Civ. Proc. 1, the policies informing Rule 21 may apply equally to the courts of appeals. The narrow question before us, therefore, is whether a court of appeals may do what a district court can do and dismiss a dispensable nondiverse party itself, or whether a court of appeals must remand the case to the dis-

---

[5] See, e. g., Rockwell Int'l Credit Corp. v. United States Aircraft Ins. Group, 823 F. 2d 302, 304 (CA9 1987); Sarnoff v. American Home Products Corp., 798 F. 2d 1075, 1079 (CA7 1986); Aetna Casualty & Surety Co. v. Hillman, 796 F. 2d 770, 775–776 (CA5 1986); Boelens v. Redman Homes, Inc., 759 F. 2d 504, 512 (CA5 1985); Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co., 700 F. 2d 889, 893 (CA2), cert. dism'd, 463 U. S. 1233 (1983); Field v. Volkswagenwerk AG, 626 F. 2d 293, 305–306 (CA3 1980); cf. Carson v. Allied News Co., 511 F. 2d 22, 24 (CA7 1975); Thomas v. Anderson, 223 F. 41, 43 (CA8 1915).

[6] See, e. g., Fritz v. American Home Shield Corp., 751 F. 2d 1152, 1154–1155 (CA11 1985); Publicker Industries, Inc. v. Roman Ceramics Corp., 603 F. 2d 1065, 1068–1069 (CA3 1979); Caperton v. Beatrice Pocahontas Coal Co., 585 F. 2d 683, 691–692, and n. 23 (CA4 1978).

trict court, leaving it to the district court's discretion to dismiss the party?

Almost every modern Court of Appeals faced with this issue has concluded that it has the authority to dismiss a dispensable nondiverse party by virtue of Rule 21.[7]  As with § 1653, we are reluctant to disturb this well-settled judicial construction, particularly when there is no evidence that this authority has been abused by the courts of appeals (or the district courts for that matter).  Furthermore, we have ourselves exercised a similar authority under Rule 21.  In *Mullaney* v. *Anderson*, 342 U. S. 415 (1952), the defendant first questioned the plaintiff-union's standing to bring suit when the case reached this Court.  Relying explicitly on Rule 21, we avoided deciding the standing issue by granting the union's motion to add as parties two of its members.  Although we did not discuss extensively Rule 21's applicability in the appellate setting, we did note that the change in the parties would not have "affected the course of the litigation" if it had occurred at some earlier point, and would not "embarrass the defendant."  *Id.*, at 417.  The Court further remarked that dismissing the petition and thereby requiring the plaintiffs to start over in the District Court "would entail needless waste and runs counter to effective judicial administration."  *Ibid.*  Finally, the Court expressed confidence that amendments at such a late stage "will rarely come into

---

[7]See, *e. g.*, *Long*, 820 F. 2d, at 416–417; *Ross* v. *Int'l Brotherhood of Electrical Workers*, 634 F. 2d 453, 456–457 (CA9 1980); *Fidelity & Casualty Co.* v. *Reserve Ins. Co.*, 596 F. 2d 914, 918 (CA9 1979); *Underwood*, 256 F. 2d, at 339; cf. *Caspary*, 725 F. 2d, at 191–192 (relying on Fed. Rule Civ. Proc. 15).  Other courts have remanded the case to the district court with mandatory instructions to allow an amendment dismissing the nondiverse party in order to preserve diversity jurisdiction.  See, *e. g.*, *Jaser* v. *New York Property Ins. Underwriting Assn.*, 815 F. 2d 240, 244 (CA2 1987).  The cases holding that appellate courts are powerless to remedy such jurisdictional defects are few and far between.  See, *e. g.*, *Field*, *supra*, at 306; *Dollar S. S. Lines, Inc.* v. *Merz*, 68 F. 2d 594, 595 (CA9 1934).

play." *Ibid;* cf. *Rogers* v. *Paul,* 382 U. S. 198, 198–199 (1965) *(per curiam).*[8]

The motion granted in *Mullaney* represented the exercise of an appellate power that long predates the enactment of the Federal Rules. In *Anonymous,* 1 F. Cas. 996, 997 (No. 444) (CC Mass. 1812), Justice Story, sitting as Circuit Justice, wrote that "[t]here is then, in the nature of an appellate jurisdiction, nothing which forbids the granting of amendments." Justice Story derived this appellate power from "the course of the common law," which permitted "'the superior court . . . [to] make such amendments, as the court below may.'" *Ibid.,* quoting *King* v. *Ponsonby,* 1 Wils. 303, 95 Eng. Rep. 631 (K. B. 1751); see also 1 F. Cas, at 997, citing *Pease* v. *Morgan,* 7 Johns. 468, 469 (N. Y. 1811). He also looked to § 32 of the Judiciary Act of 1789, which provided that a federal court "may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as the said courts respectively shall in their discretion and by their rules prescribe." 1 Stat. 91, formerly codified at 28 U. S. C. § 777 (1946 ed.).[9] He cautioned, however, that this amendment power should be used in such a way that "no unfair advantage shall be taken by one party, and no oppression practised by the other." 1 F. Cas., at 998.

While Justice Story's opinion dealt generally with the amendment power of appellate courts, Chief Justice Marshall's opinion for this Court in *Carneal* v. *Banks,* 10 Wheat. 181 (1825), dealt with the issue at hand—the power of appellate courts to grant motions to dismiss dispensable non-

---

[8] *Mullaney* v. *Anderson,* 342 U. S. 415 (1952), cannot be explained as a case involving a technical change to identify the real parties in interest. The addition of the union members was considered necessary to establish the existence of a justiciable case. At the time, it was not clear that unions had standing to sue on behalf of their members. See *NAACP* v. *Button,* 371 U. S. 415, 428 (1963).

[9] Section 32 of the Judiciary Act was repealed with the passage of the Federal Rules of Civil Procedure. Act of June 25, 1948, Pub. L. 773, 62 Stat. 869, 993.

diverse parties. The case involved a suit by plaintiff Banks against two groups of defendants, the heirs of Harvie and the heirs of Carneal. Only the heirs of Carneal had citizenship diverse from the plaintiff. After noting this jurisdictional problem, the Court stated: "The bill . . . as to Harvie's heirs, may be dismissed, without in any manner affecting the suit against Carneal's heirs. That they have been improperly made defendants in his bill, cannot affect the jurisdiction of the Court as between those parties who are properly before it." *Id.*, at 188. The Court predicated this ruling, in part, on the fact that it was not "indispensable to bring Harvie's heirs before the Court." *Ibid.* Although the Court did not state explicitly whether the Circuit Court in which the case arose had dismissed Harvie's heirs, a review of the Circuit Court's opinion in *Carneal* reveals that the lower court never dismissed the nondiverse parties.[10] Thus, this Court itself dismissed the nondiverse parties while acting in an appellate capacity.

By contrast, *Horn* v. *Lockhart*, 17 Wall. 570 (1873), clearly involved a trial court's decision to dismiss dispensable non-diverse parties. In approving such action, however, the Court used language that is strikingly reminiscent of that employed in *Carneal:* "[T]he question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether . . . they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights can be made, the jurisdiction of the court should be retained and the suit dismissed as to them." 17 Wall., at 579. This similarity of language is not surprising; the considerations implicit in a trial court's exercise of this power are equally applicable when an appellate court exercises the same power. More-over, once it is recognized that trial courts have this amendment power, it is exceedingly difficult to argue that a similar

---

[10] We recognize that copies of the Circuit Court opinion in *Carneal* are not easily available; however, a handwritten copy resides in the National Archives.

power exercised by appellate courts presents the risk of jurisdiction retroactively conferred.

Although these 19th-century cases were decided in a procedural era different from our own, it is apparent that the weight of authority favored the view that appellate courts possessed the authority to grant motions to dismiss dispensable nondiverse parties.[11] Courts relied then on § 32 of the Judiciary Act of 1789 or on the inherent power of appellate courts. Today courts rely on *Mullaney* or Federal Rule 21. We decline to disturb that deeply rooted understanding of appellate power, particularly when requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention. See *Mullaney*, 342 U. S., at 417. Appellate-level amendments to correct jurisdictional defects may not be the most intellectually satisfying approach to the

---

[11] In *Kennedy* v. *Bank of Georgia*, 8 How. 586 (1850), the Court rejected the argument that its prior judgment in the same case was void for want of jurisdiction because it lacked the power to accept a stipulation amending the pleadings to reflect correctly the existence of diversity jurisdiction. In so doing, the Court stated: "[I]t has been the practice of this court, where amendments are necessary, to remand the cause to the Circuit Court for that purpose. The only exception to this rule has been, where counsel on both sides have agreed to the amendment." *Id.*, at 611. This passage suggests that the Court viewed this limitation on its amendment power as *discretionary*. There is no indication that the Court thought it lacked the *authority* to permit such amendments. On the contrary, in discussing the proper course of action in the case, the Court incorporated Justice Story's broad view of the common-law power of appellate courts to accept amendments. See *ibid.*, citing *Anonymous*, 1 F. Cas. 996 (No. 444) (CC Mass. 1812). Although there is language in several 19th-century cases that can be read to suggest that the Court did not have the authority to allow such amendments, see *Denny* v. *Pironi*, 141 U. S. 121, 124 (1891); *Menard* v. *Goggan*, 121 U. S. 253, 254 (1887); *Peper* v. *Fordyce*, 119 U. S. 469, 471 (1886); *Halsted* v. *Buster*, 119 U. S. 341, 342 (1886); *Continental Ins. Co.* v. *Rhoads*, 119 U. S. 237, 240 (1886), we believe these cases are best understood as examples of the discretionary practice referred to in *Kennedy* v. *Bank of Georgia*, *supra*. See *Norton* v. *Larney*, 266 U. S. 511, 515–516 (1925).

spoiler problem, but, as Judge Posner eloquently noted, because "law is an instrument of governance rather than a hymn to intellectual beauty, some consideration must be given to practicalities." 854 F. 2d, at 925.

In this case, the practicalities weigh heavily in favor of the decision made by the Court of Appeals panel to grant Newman-Green's motion to dismiss Bettison as a party. If the entire suit were dismissed, Newman-Green would simply refile in the District Court against the Venezuelan corporation and the four Venezuelans and submit the discovery materials already in hand. The case would then proceed to a preordained judgment. See *id.*, at 932, 939–940 (Easterbrook, J., dissenting).[12] Newman-Green should not be compelled to jump through these judicial hoops merely for the sake of hypertechnical jurisdictional purity.

Although we hold that the courts of appeals have the authority to dismiss a dispensable nondiverse party, we emphasize that such authority should be exercised sparingly. In

---

[12] The en banc Court of Appeals thought it would require a "crystal ball" to determine the fate of this litigation in the District Court upon remand, speculating that Newman-Green might abandon its federal-court action and move to state court or even to a Venezuelan court. 854 F. 2d, at 925. We agree with Judge Easterbrook, however, that "[a] great many zeros precede the first significant digit in the probability of this." *Id.*, at 940 (dissenting opinion). As he cogently explained:

"After the panel of our court flagged the jurisdictional problem, [Newman-Green] had to decide what it wanted to do. [Newman-Green] had lost the bulk of its case in the district court (although it had won some $200,000 on a portion of the case no longer in dispute). It was guaranteed a new run at the subject in state court, against all defendants, by retaining Bettison as a defendant. [Newman-Green] instead filed a motion to dismiss Bettison and take its chances on the merits. If it was willing to pursue this suit in federal court without Bettison when all it had to show for itself was a loss, and to abandon any hope of reaching Bettison's assets if it should prevail, what is it going to do now that it has an opinion in its favor on the merits? Go to state court, where things could get worse but are not likely to get better? If this suit is dismissed, it will be refiled in federal court. The only question is just how much time will be lost along the way." *Ibid.*

each case, the appellate court should carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation. It may be that the presence of the nondiverse party produced a tactical advantage for one party or another. If factual disputes arise, it might be appropriate to remand the case to the district court, which would be in a better position to make the prejudice determination. But we decline to erect a *per se* rule that the district court must first make such a determination in every case.

In the instant case, it is evident that none of the parties will be harmed by Bettison's dismissal. First, Bettison's presence did not provide Newman-Green with a tactical advantage. Discovery directed to Bettison while he was a party would have been available even if he had not been a party. See, *e. g.*, Fed. Rule Civ. Proc. 30(a); 28 U. S. C. § 1783. Second, given that all of the guarantors (including Bettison) are jointly and severally liable, it cannot be argued that Bettison was indispensable to the suit. Fed. Rule Civ. Proc. 19(b); see 854 F. 2d, at 938 (Easterbrook, J., dissenting). The only person who faces any prejudice is Bettison himself, who has participated in this litigation from the start, and who would face the possibility of suit in a state or Venezuelan court. The panel solved this problem by terminating the litigation against Bettison with prejudice, thus leaving the other guarantors with the burden of pursuing Bettison to obtain contribution or indemnity. 832 F. 2d, at 420. The panel's disposition was entirely appropriate. Nothing but a waste of time and resources would be engendered by remanding to the District Court or by forcing these parties to begin anew.

### III

For the reasons stated, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY, with whom JUSTICE SCALIA joins, dissenting.

Our colleagues on the Court of Appeals disagree about whether 28 U. S. C. § 1653, which provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate court[,]" empowers a court of appeals to dismiss a party who spoils complete diversity. The Court holds today that § 1653 does not give an appellate court the power to cure actual defects in jurisdiction, but extends only to defects in its allegation. See *ante*, at 830. I agree that this is the correct interpretation of § 1653.

That should end the case. For if Congress thought it necessary to provide by affirmative statutory grant the rather ministerial power to cure defective allegations in jurisdiction, the more awesome power of curing actual defects in jurisdiction ought not be presumed, absent a statutory grant just as explicit. The balance of the Court's opinion in effect demonstrates that no such clear source of authority can be found to rebut the strong negative implication from the Court's interpretation of § 1653. The Court nevertheless holds that the power in question exists, though it cannot provide us with its precise location.

As an initial matter, it is disturbing that the Court does not address in a substantive way the grave, brooding question whether Federal Rule of Civil Procedure 21 affords even the district courts the power to confer jurisdiction retroactively by dismissing a nondiverse party. On this critical point, the Court states only that this question is "well settled" in the lower courts. See *ante*, at 832. But it has never been the rule that federal courts, whose jurisdiction is created and limited by statute, see *Finley* v. *United States*, *ante*, at 547–548, acquire power by adverse possession. Indeed, I have some doubts that Rule 21 provides this power to district courts. For one thing, it is important to note that Rule 21 governs only misjoinder and nonjoinder. But that is not what is at issue in this case. There is no claim here that

Bettison is an improper party to this action, only that his presence defeats federal jurisdiction. It must be remembered, moreover, that Federal Rule of Civil Procedure 82 expressly provides that the other Rules must not be construed to extend or limit the jurisdiction of the district courts. Since dismissing a nondiverse party confers jurisdiction retroactively on the district court, it is questionable whether relying on Rule 21 is consistent with Rule 82's clear admonition. Finally, 28 U. S. C. § 1653 governs the power of not only appellate courts but also trial courts, and if, as the Court holds, that section confers only the authority to cure defective allegations of jurisdiction, then the same negative implication which I discuss above clouds the district courts' ability to cure actual jurisdictional defects under the vague authority of Rule 21. The charming utility of the *nunc pro tunc* device cannot obscure its outright fiction.

Even on the assumption, however, that Rule 21 provides the district courts with the necessary authority to dismiss a nondiverse party at any stage of the litigation for the sole purpose of creating jurisdiction where none existed before, it is just not possible to rely on that Rule as the source of authority for appellate courts. For notwithstanding some rather odd language to the contrary in *Mullaney* v. *Anderson*, 342 U. S. 415, 417 (1952) ("Rule 21 will *rarely* come into play at this [*i. e.*, in the Supreme Court] stage of a litigation") (emphasis added), it is well settled that "the Federal Rules of Civil Procedure . . . apply only in the federal district courts." *Automobile Workers* v. *Scofield*, 382 U. S. 205, 217, n. 10 (1965).

The two 19th-century cases relied upon by the Court, *Horn* v. *Lockhart*, 17 Wall. 570 (1873), and *Carneal* v. *Banks*, 10 Wheat. 181 (1825), do not establish the authority of an appellate court to dismiss a nondiverse party to preserve jurisdiction. Both the majority and the dissent in the Court of Appeals recognized that, at most, *Horn* speaks of the powers of a trial court, see 854 F. 2d 916, 921 (1988) (Posner, J.); *id.*, at

931 (Easterbrook, J.), and the Court concedes as much, see *ante*, at 835–836. Nor does *Carneal* establish in any explicit way, or even by necessary inference, the authority of an appellate court to preserve jurisdiction by dismissing a nondiverse party who defeats complete diversity.

The majority's reliance on *Carneal* proceeds from a premise that is most questionable. It assumes that *Carneal* involved a single action in which this Court dismissed on its own the nondiverse parties. Judge Posner, however, observed that the Court in *Carneal* may have in fact "treated the suit as if it were two suits, one satisfying the requirement of complete diversity, the other dismissable and dismissed." 854 F. 2d, at 921. Judge Posner, perhaps, understated his own case. *Carneal* involved a contract in which the plaintiff, Banks, "agreed to transfer to Carneal the right of the said Banks in 30,000 acres of land purchased by him from John Harvie," in exchange for which Carneal promised to convey to Banks "a tract of 2,000 acres of land on Green River." 10 Wheat., at 182. Banks claimed that "Carneal was guilty of fraud in pretending to have a good title to the said 2,000 acres of land." *Id.*, at 182–183. Because the contract involved a conveyance of the 30,000 acres from Harvie to Carneal, in order for Banks to obtain complete relief, he prayed both "that the contract [between Carneal and Banks] . . . be rescinded" and "that the heirs of John Harvie . . . , in whom the legal title to the said 30,000 acres remains, . . . be decreed to convey the same to [Banks]." *Id.*, at 183. The jurisdictional problem was that, although there was complete diversity between Banks and Carneal's heirs, there was no diversity between Banks and Harvie's heirs. See *id.*, at 187–188. The Court appears to have treated the claims against Harvie's heirs (the nondiverse parties) as a separate suit which in no way affected jurisdiction over Banks' suit against Carneal's heirs. The Court stated: "If the validity of this objection [the lack of diversity], so far as respects Harvie's heirs, be unquestionable, it cannot affect the *suit*

against Carneal's heirs . . . ." *Id.*, at 188 (emphasis added). Because the Court concluded that Harvie's heirs were not indispensable to the suit against Carneal's heirs, the Court held that "[t]he bill . . . , as to Harvie's heirs, may be dismissed without in any manner affecting the *suit* against Carneal's heirs." *Ibid.* (emphasis added). The more plausible interpretation of *Carneal* is that the Court did not dismiss the nondiverse parties in a single action and then proceed to the merits, but rather dismissed the suit against the nondiverse parties for want of jurisdiction and went on to decide the merits of the separate suit that met the requirements of complete diversity. Seen in this light, *Carneal* does not establish the authority of an appellate court to preserve jurisdiction by dismissing a nondiverse party, but rather evidences only the usual appellate power to dismiss an action in which the federal courts lack jurisdictional authority.

There is, moreover, a more basic reason not to place heavy reliance on *Carneal* and *Horn*. As the Court concedes, these cases "were decided in a procedural era different from our own," *ante*, at 836. The powers of the district courts and courts of appeals are now governed by Federal Rules of Procedure and various other provisions in Title 28. In my view, these cases do not establish an authority in the appellate courts so clear that it survives the plain negative implication from the one statutory provision on point (§ 1653). Whatever may be implied from *Carneal*, the present statutory authority permits appellate courts to cure only defective allegations of jurisdiction and not jurisdictional flaws.

I am not at all persuaded, either, that practical considerations in the case warrant our holding that courts of appeals have the power to dismiss nondiverse parties. The dissent in the Court of Appeals, and the opinion for the Court here, each assume it would be quite a waste to remand the case to the District Court so that it may determine whether an amendment to the complaint ought to be allowed. But if, as the Court and the dissent below contend, there would be no

prejudice to respondents from amending the complaint to dismiss the nondiverse party, how long could it take for the District Court to decide this and reenter its judgment? I should think a limited remand for this purpose, with the appellate panel to resume jurisdiction if amendment is permitted, would be most expeditious. The overriding practical consideration is that the District Court, which managed the process of discovery and the presentation of evidence at trial, is in the much better position to determine whether the dismissal of the nondiverse party, after judgment, would prejudice the defendant.

For these reasons, and with all due respect, I dissent from the opinion and judgment of the Court.