**Maria Dolores KERY, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**Civil No. 94–2056CCC.**

United States District Court,
D. Puerto Rico.

May 8, 1997.

Erick Morales, San Juan, PR, for Plaintiff.

Luis A. Oliver, San Juan, PR, for Defendant.

## ORDER

CEREZO, Chief Judge.

Defendant American Airlines has moved to dismiss this case for lack of diversity jurisdiction (**docket entry 29**), claiming that plaintiff Maria Dolores Kery is an American citizen domiciled in the Dominican Republic and, as such, cannot sue or be sued in federal court on the basis of diversity of state citizenship. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828–30, 109 S.Ct. 2218, 2221, 104 L.Ed.2d 893 (1989). In her response to the motion to dismiss (**docket entry 36**), plaintiff asserts that she is both a citizen of the United States and of the Dominican Republic, and maintains that her Dominican citizenship entitles her to alienage jurisdiction. Defendant has filed its opposition (**docket entry 37**), based on recent case law that apparently contradicts plaintiff's claim.

As observed by the Court of Appeals for the Fifth Circuit In *Coury v. Prot,* 85 F.3d 244, 250 (5th Cir.1996), "there is an emerging consensus among courts that, for a dual national citizen, only the American citizenship is relevant for purposes of diversity under 28 U.S.C. section 1332. Consequently, diversity jurisdiction may be properly invoked only when a dual citizen's domicile, and thus his citizenship, is in a state diverse from that of adverse parties." In accord with the Fifth's Circuit position are the Court of Appeals for the Second Circuit, *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 507 (2nd Cir.1991) ("In matters of diversity jurisdiction American citizenship will determine diversity.") and the Seventh Circuit, *Sadat v. Mertes,* 615 F.2d 1176, 1187 (7th Cir.1980) ("... ordinarily ... only the American nationality of the dual citizen should be recognized under 28 U.S.C. section 1332(a)."), as well as several district courts. The commentators are in agreement with this conclusion of the Courts of Appeals that have addressed the issue. As explained by James Moore:

> First, the major purpose of alienage jurisdiction is to promote international relations by assuring other countries that litigation involving their nationals will be treated at the national level. As one court concluded, it is unlikely that a foreign country "would become martially exorcized over a wrong to a citizen of the United States who can go into his native courts as a native." Second, alienage jurisdiction is also Intended to allow foreign subjects to avoid real or perceived bias in the state courts. The dual citizen, however, is an American for whom this justification ought not be available.

1 Moore's *Federal Practice* section 0.74[4], p. 797. *See also* Wright, Miller and Cooper, *Federal Practice and Procedure: Jurisdiction 2d* section 3621 pp. 581–82 (1984 & 1996 Supp.).

In *Sadat,* however, the Seventh Circuit suggested a possible exception to this general rule where the dual citizen's "dominant nationality" was that of the foreign country. 615 F.2d at 1187. In order to determine the "dominant nationality," the Court resorted to the two-pronged test established by section 171(c) of the Restatement (Second) of the Foreign Relations Law of the United States, i.e., (I) that by reason of residence or other association subject to his control (or the control of a member of his family whose nationality determines his nationality) the dominant nationality is that of the other state and (ii) he (or such member of his family) has manifested an intention to be a national of the other state and has taken all reasonably

**266**

practicable steps to avoid or terminate his status as a national of the respondent state. Applying this test, the Court determined that the dominant nationality of plaintiff Sadat, who was born Egyptian and was a naturalized American domiciled in Egypt at the time of the action, was not the Egyptian. The Court considered plaintiff's voluntary naturalization in the U.S. and renunciation of foreign alliances, as well as his registration In U.S. embassies during his travels abroad and voting by absentee ballot In the U.S. presidential election, and found that he had failed to meet the second prong of the test.

In an attempt to avoid the application of the general rule to the facts of this case, plaintiff claims to fall within the exception suggested by *Sadat.* Thus, alleging that her dominant nationality is the Dominican, she has submitted copies of her Dominican voting card, a contract with the Dominican electrical power company, a contract for the rent of a lot entered into with the Municipality of Sabana Grande de Boya, and a contract for the purchase of a house in that same Municipality. But, while these documents do serve to satisfy the first prong of the test on dominant nationality, they fall short from establishing that plaintiff "has taken all reasonably practicable steps to avoid or terminate his status as a national of the respondent state", its second prong. In fact, no evidence on this matter has been submitted by plaintiff. Defendant, on the other hand, has provided us with a copy of plaintiff's passport, which shows that it had been reissued as recently as February of 1995. It appears evident, then, that plaintiff continues to benefit from her status as an American citizen. Under these circumstances, we would be hardpressed to conclude that her dominant nationality is the Dominican.

As the *Sadat* exception is not applicable, we must abide by the general rule. Since plaintiff Is not entitled to alienage jurisdiction, and no diversity of citizenship exists due to the fact that she is an American citizen domiciled in a foreign country, we find ourselves without jurisdiction to entertain this matter. Accordingly, defendant's motion to dismiss (docket entry 29) is GRANTED. This action is hereby DISMISSED, without prejudice, as to Its refiling in a Court with proper jurisdiction.

SO ORDERED.