BEA, Circuit Judge,
dissenting:
When Northstar Financial Advisors, Inc. (“Northstar”) commenced this action by filing its complaint, it did not own, nor had it ever owned any Schwab Total Bond Market fund (“Fund”) shares. Likewise, at the commencement of this action, Northstar did not own any claims of anyone who had owned any of such shares during the period when the defendants are alleged improperly to have lowered the share value of the Fund.
*1066 Hence, when Northstar sued for damages on its own behalf and for those of the class of share owners Northstar sought to represent in this class action, Northstar itself had not suffered any losses, nor did Northstar own any claims of others who had suffered losses the defendants had allegedly caused. Last, no other person who claimed to have been injured by defendants joined Northstar as plaintiff.
Defendants moved to dismiss North-star’s complaint for lack of standing, because Northstar failed to allege it had suffered an injury in fact.[1] Northstar had no “case or controversy” within the meaning of Article III of the Constitution.[2]
The district court quite properly granted defendants’ motion and dismissed the complaint without prejudice,[3] but then quite misguidedly suggested that through an amended complaint, Northstar could remedy its lack of standing by an assignment of rights from a person who had been a Fund shareholder during the period when defendants allegedly injured the Fund’s shareholders. More than three months later, Northstar found Henry Holz, a man who had indeed owned Fund shares during the period in question. Holz could claim injury in fact; he did have standing to sue. But for reasons best known to himself, he chose neither to sue nor to join North-star’s action. Northstar procured an assignment of Holz’s claims against defendants.
Northstar then filed an amended complaint that alleged Holz’s assignment of claims to Northstar. Defendants again moved to dismiss on the ground that Northstar still had not alleged facts sufficient to establish Northstar’s standing to sue, only to have the district court deny the motion upon an original—but nonetheless erroneous—theory. The district court noted that “in light of [the] previous holding that [an] assignment [of claims] would cure the [Northstar’s] lack of standing, and direction to the [Northstar] to file an amended complaint based on the assignment, it would be unfair to [Northstar] to punish them for relying on the [prior district judge’s] specific instructions.” Northstar, 781 F.Supp.2d at 932.[4] Of *1067 course, if this notion of “unfairness”' were the law, parties benefitted by erroneous rulings of district courts and who took action in reliance on such erroneous rulings could not be made to .give up those benefits.
Thankfully, there is no exception to the requirement of standing based on earlier district court error.[5] It is not “unfair” to lose a meritless point won earlier before an erring judge. What is “unfair” is not to apply the correct law. Here, both district court judges erred. Because Northstar failed to allege facts sufficient to constitute standing to sue in its complaint, the district court originally lacked subject matter jurisdiction. See Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir.2004). It was not even permissible to grant leave to amend to see if the standing defect could somehow be remedied. See Footnote 3, supra. But even if permissible, an amendment to allege an assignment of rights which took place over three months after the action was commenced was useless to allege the standing Northstar needed to commence the action in the first place. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1381 (9th Cir.1988) (citing Mollan v. Torrance, 9 Wheat. 537, 22 U.S. 537, 539, 6 L.Ed. 154 (1824) (jurisdiction “depends upon the state of things at the time of the action brought”); Nuclear Eng’g Co. v. Scott, 660 F.2d 241, 248 (7th Cir.1981) (“Jurisdictional questions are answered by reference to the time of the filing of an action----”); Mobil Oil Corp. v. Kelley, 493 F.2d 784, 786 (5th Cir.1974) (jurisdiction “is determined at the outset of the suit”)). To determine federal court jurisdiction, “we look to the original, rather than to the amended[] complaint.” Id.
The first district court judge did not have jurisdiction to grant leave to amend, and the second judge could not—out of considerations of “fairness”—allow an amendment or a supplement to an original *1068 complaint of which the district court had no subject matter jurisdiction.
The majority and the district court opinion examine the law of other circuits “because there is no published Ninth Circuit authority” as to whether “parties may cure standing deficiencies through supplemental pleadings.” Northstar, 781 F.Supp.2d at 933. In dicta,[6]' this court reiterated the general principle that “jurisdiction is based on facts that exist at the time of filing” and noted that the “Supreme Court has enunciated few exceptions to this general principle.... So far, permitting standing based on a property interest acquired after filing is not one of them.” Righthaven, LLC v. Hoehn, 716 F.3d 1166, 1171 (9th Cir.2013).[7] In any event, even if this panel were not bound by the dicta of Righthaven, Moron-go is dispositive: where the district court does not have subject matter jurisdiction over a matter at the time of filing, subsequent events do not confer subject matter jurisdiction on the district court. The district court has jurisdiction only to dismiss the complaint.[8]
Nevertheless, the majority cites to limited exceptions where courts have allowed the cure of jurisdictional defects other than standing through additional pleadings. In short, the district court and the majority argue that if a supplemental pleading can cure defects in the original complaint, and if that supplemental pleading can be tacked onto the original complaint, then Northstar would retroactively have standing as of its original complaint, even though “subject-matter jurisdiction depends on the state of things at the time of the action brought.” Rockwell Intern. Corp. v. U.S., 549 U.S. 457, 473, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007) (internal quotations and citation omitted). This argument misses one crucial point: “[t]he state of things and the originally alleged state of things are not synonymous.” Id. Therefore, even if our circuit allowed supplemental pleadings to cure standing deficiencies, those supplemental pleadings must allege facts necessary to establish standing only as those facts existed at the time of the original complaint. This is not a novel concept in our circuit. See Wilbur v. Locke, 423 F.3d 1101 (9th Cir.2005), abrogated on other grounds by Levin v. Commerce Energy, Inc., 560 U.S. 413, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010) (“[Standing is determined as of the date of the filing of the complaint.... [t]he .party invoking the jurisdiction of the court cannot rely on *1069 events that unfolded after the filing of the complaint to establish its standing.”) (internal quotations and citation omitted). In other words, even though “a party [may] serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented,” Fed.R.Civ.P. 15(d) (emphasis added), the facts which establish a party’s standing must have existed when the original complaint was filed. Thus a Fed.R.Civ.P. 15(d) supplemental pleading cannot validly allege post-complaint transactions to cure a lack of standing.[9]’[10]
If all an uninjured party need do to get around pesky Article III standing requirements is to file a complaint, then ask for liberal leave to supplement under Fed. R.Civ.P. 15(d) to allege after-acquired rights of those who were timely injured, the long-standing general rule which requires injury-in-fact at commencement of the action for standing to exist quickly would lose all force. Uninjured parties, particularly those in search of class action lead plaintiff status, could sue first, then trawl for those truly and timely injured. Today the majority green-lights those who would race to the courthouse and bend Federal Rules of Civil Procedure and Article III standing requirements to gain an edge over other claimants who are not as fleet of foot. I respectfully dissent.

. A party seeking to invoke a federal court’s jurisdiction must demonstrate three things: (1) an "injury in fact,” which is an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical”; (2) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant and not from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotations and citations omitted).

. Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir.2004) (“A suit brought by a plaintiff without Article III standing is not a 'case or controversy,’ and an Article III federal court therefore lacks subject matter jurisdiction over the suit.”).

. An argument can be made that leave to amend was permissibly granted because it was possible that the lack of allegations constituting standing had been an oversight. However, even that argument is foreclosed in this circuit. "If jurisdiction is lacking at the outset, [a] district court has no power to do anything with the case except dismiss.” Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir.1988) (internal quotations and citations omitted). Therefore, "[i]f jurisdiction was lacking, then [a] court’s various orders, including that granting leave to amend the complaint, were nullities.” Id. at 1381. This circuit has recognized no exceptions to Mor-ongo for the retroactive cure of lack of standing through a supplemental pleading of post-complaint events.

. By then the case was reassigned to another . district court judge.

. “Unfairness” based on reliance on an erroneous earlier district court ruling might be grounds for certain relief, such as tolling of a deadline. See Smith v. Ratelle, 323 F.3d 813, 819 (9th Cir.2003) ("[W]e have recognized that a district court's erroneous dismissal of a mixed habeas petition is sufficiently extraordinary to justify equitable tolling.”). But when a judge blows a call on standing, the error creates jurisdiction where the law does not, and notions of "fairness” clash with constitutional requirements. The requirement of standing ensures that courts “limit federal jurisdiction to those cases in which an adversarial setting is guaranteed by the parties’ 'personal stake' in the outcome of the litigation.” LaDuke v. Nelson, 762 F.2d 1318, 1322-23 (9th Cir.1985) (citing Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Requiring that a plaintiff have an actual injury in fact "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.” Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Of course, had Northstar accepted the dismissal without prejudice and then filed a new complaint after it obtained an assignment of rights, it would have had standing and a personal stake in the outcome of this litigation. The ease with which Northstar could have obtained standing makes its actions puzzling at first blush. However, had Northstar so refiled, it would also have risked its position as the first to have filed as representative of a class of plaintiffs. Aliy perceived impracticality of requiring Northstar to adhere to the most basic of our Constitution's standing requirements should not vitiate the need to do so. See Sprint Commc’ns Co. L.P. v. APCC Servs., 554 U.S. 269, 305, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008) (Roberts, C.J., dissenting) ("The Court chooses to elevate expediency above the strictures imposed by the Constitution. That is a tradeoff the Constitution does not allow .... [T]he ease with which [plaintiff] can comply with the requirements of Article III is not a reason to abandon our precedents; it is a reason to adhere to them.”).

. This court is bound by its own reasoned dicta. United States v. Johnson, 256 F.3d 895, 914 (9th Cir.2001) (en banc). Righthaven’s dicta fits this requirement.

. In Righthaven, a media company and publisher, Stephens Media LLC, assigned its right to sue for infringement of copyright to Righthaven LLC. 716 F.3d 1166, 1168 (9th Cir. 2013). Righthaven then sued two website operators for displaying content of which Stephens Media was the original copyright owner. Id. Defendants filed motions to dismiss for lack of standing, asserting that Righthaven did not have standing to sue because Stephens Media had assigned only a bare right to sue. Under circuit law, assignment of the bare right to sue without the transfer of an associated exclusive" right did not confer standing to sue on Righthaven. Id. at 1168— 69. Before the district court ruled on the motions to dismiss, Righthaven and Stephens Media executed a "clarification and amendment” to the prior assignment that purported to convey all ownership rights to Righthaven. Id. at 1169. The district court granted the motions to dismiss. Id. On appeal, we affirmed because Righthaven did not have standing to sue at the time of filing, and its subsequent clarification and amendment did not include terms sufficient to convey an exclusive copyright. Id. at 1171.

.Rather than extend the length of this dissent, I recommend the reader simply read the opinions in Morongo and Righthaven, should he have any doubt as to their applicability.

. Of course, I do not dispute that plaintiffs may cure various jurisdictional defects—other than standing—through additional pleadings that allege relevant post-complaint events and conditions. The majority cites to several such instances (none of which are decisions from our circuit, and none of which allowed the retroactive cure of lack of allegations of injury-in-fact through a supplemental pleading alleging a post-complaint injury in fact). See e.g., Newman-Green Inc. v. Alfonzo-Larrain, 490 U.S. 826, 831-38, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (the Court held that an appellate court may drop a non-diverse defendant—under Fed.R.Civ.P. 21—to preserve diversity jurisdiction over the claims of a plaintiff who suffered injury-in-fact before the original complaint was filed); Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1335-37 (Fed.Cir.2008) (the Federal Circuit cited its own precedent that allows courts to look at “facts existing at the time the complaint under consideration was filed” (internal quotations and citation omitted) (emphasis in original)).

. Because I would dismiss for lack of standing, I—like the majority—express no views as to whether the Securities Litigation Uniform Standards Act would preempt Northstar’s claim. I also express no views on the claims based on breach of contract, breach of fiduciary obligations, or other claimed grounds of relief. See Righthaven, 716 F.3d at 1173.