**Maria del Pilar LAPEIRA-PEREZ, Plaintiff,**

v.

**MULTINATIONAL LIFE INSURANCE CO., INC., Defendant.**

**Civil No. 15–1160 (SEC)**

United States District Court, D. Puerto Rico.

Signed 03/14/2016

Javier A. Rivera–Vaquer, Jose A. Rivera–Cordero, Rivera Mercado & Rivera Cordero, San Juan, PR, for Plaintiff.

Marcos Valls–Sanchez, Marcos Valls Sanchez, San Juan, PR, Maricarmen Almodovar–Diaz, San Juan, PR, for Defendant.

### OPINION & ORDER

SALVADOR E. CASELLAS, United States Senior District Judge

Before the Court is a motion to dismiss for lack of diversity jurisdiction filed by defendant Multinational Life Insurance Co., Inc. (Defendant). Docket # 34. For the reasons that follow, the motion is **GRANTED**, and the case shall be dismissed without prejudice for want of jurisdiction.

### I. Background

Plaintiff was born in Madrid, Spain. She later moved to Puerto Rico with her late husband, a U.S. citizen, in the 1970s. During her time in Puerto Rico, Plaintiff renewed her green card on various occasions. She also never voted or held a driver's license while on the island. While she was offered the opportunity to become a U.S. citizen on various occasions, she always declined. This changed in 2006, when Plaintiff decided to leave Puerto Rico for Spain. Since her daughters remained in the U.S., Plaintiff finally decided to obtain her U.S. citizenship. She reasoned that if she ever needed to come back to visit or help her daughters, a dual citizenship would allow her to just "grab a plane and go," instead of dealing with a potentially complicated visa situation.

### II. Analysis

The federal diversity statute, 28 U.S.C. § 1332, endows federal district courts with jurisdiction over disputes involving more than $75,000 and where complete diversity of citizenship exists between the parties. Sweeney v. Westvaco Co., 926 F.2d 29, 41 (1st Cir. 1991), cert. denied, 502 U.S. 899, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991); Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). In the typical diversity case, complete diversity exists only between "citizens of different States." See 28 U.S.C. § 1332(a)(1). However, under the alienage provision of this statute, § 1332(a)(2), complete diversity may also lie between "citizens of a State and citizens or subjects of a foreign state."

 Here, Defendant argues that the complaint must be dismissed for want of complete diversity between the parties.

Defendant first argues that, since Plaintiff is currently domiciled abroad, she is not a "citizen of any State." Accordingly, Defendant posits that there is no diversity pursuant to § 1332(a)(1). That much is true. As the Supreme Court has stated, in "order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States _and_ be domiciled within the State." Newman–Green, Inc. v. Alfonzo–Larrain, 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (citing Robertson v. Cease, 97 U.S. 646, 648–649, 24 L.Ed. 1057 (1878)) (emphasis in original). When U.S. citizens are domiciled abroad, they are considered "stateless" for purposes of the diversity statute, and so complete diversity does not exist. See Id. Plaintiff does not appear to contest this conclusion.

Defendant further argues that Plaintiff's dual citizenship also forecloses the possibility of anchoring her claims under the alienage provision of the diversity statute. The weight of authority supports this argument. See e.g. Newman–Green, Inc. v. Alfonzo–Larrain, 490 U.S. 826, 829, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (the general rule is that litigant's U.S. citizenship generally destroys complete diversity under § 1332(a)(2)). Brushing this aside, Plaintiff cites to the Seventh Circuit's ruling in Sadat v. Mertes, 615 F.2d 1176 (7th Cir. 1980) for the proposition that her closer ties to Spain are sufficient to ignore her U.S. citizenship in determining whether the Court has alienage jurisdiction in this case. The Court is not persuaded.

In Sadat, the Seventh Circuit noted that the grant of alienage jurisdiction is "founded on the fear of giving offense to foreign countries." Sadat, 615 F.2d at 1183. But principles of international law suggest that such a fear is unfounded when a foreign citizen is a U.S. citizen as well; after all, "a foreign country cannot complain about the

treatment received by one of its citizens by a country which also regards that person as a national." Sadat, 615 F.2d at 1187. This is why the Seventh Circuit agreed that, as a general rule, "only the U.S. citizenship of the plaintiff should be recognized under 28 U.S.C. § 1332(a)." Applying this rule to the case, the Seventh Circuit held that Sadat's dual citizenship destroyed diversity under the alienage provision, § 1332(a)(2). As such, Sadat lends Plaintiff no help.

However, the court in Sadat did recognize that there may be certain situations where "the respondent state's relationship to the person is so remote that the individual is entitled to protection from its actions under international law." Id. This is termed the "dominant nationality" rule, which applies where the individual can show that

(i) his dominant nationality, by reason of residence or other association subject to his control (or the control of a member of his family whose nationality determines his nationality) is that of the other state and

(ii) he (or such member of his family) has manifested an intention to be a national of the other state and has taken all reasonably practicable steps to avoid or terminate his status as a national of the respondent state.

Restatement (Second) of the Foreign Relations Law of the United States s 171(c) (1965) (emphasis added).

On this point, the Seventh Circuit ruled that, even "assuming arguendo that a dual national whose dominant nationality is that of a foreign country should be regarded as a 'citizen or subject of a foreign state' within the meaning of [§ 1332(a)(2)], the record establishe[d] that the plaintiff's

Egyptian nationality [was] not dominant." Sadat, 615 F.2d at 1187.[1]

 The same occurs here. At this stage, Plaintiff bears the burden of supporting her jurisdictional allegations with competent proof. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942). This, she has failed to do. Plaintiff does not set forth any evidence to show that she has "taken all reasonably practicable steps to avoid or terminate" her status as a U.S. citizen. In fact, just the opposite seems to be the case; by her admission, Plaintiff chose to become a U.S. citizen in order to reap the benefits of expedited travel to the United States, which she continues to enjoy. Accordingly, the general rule applies; the fact that Plaintiff is a U.S. citizen destroys diversity jurisdiction under § 1332(a)(2).

### III. Conclusion

The Court notes that the result in this case seems clearly at odds with the general purpose behind the grant of diversity jurisdiction. As Professor Erwin Chemerinsky succinctly puts it:

> A person who is not a citizen of any state seems just as likely to be a victim of prejudice against out-of-staters as a citizen of another state. In fact, a court might be reluctant to discriminate against citizens of other states for fear that their state courts might retaliate. Individuals who are not citizens of any state, however, seem to be the most vulnerable to potential discrimination.

See E. Chemerinsky, *Federal Jurisdiction* 318 (6th Ed. 2012). Nevertheless, the Court is bound by decades of precedent.

For the reasons stated above, the Court shall dismiss this action without prejudice for lack of complete diversity between the parties.

**IT IS SO ORDERED.**

1. Contrary to what Plaintiff insinuates, the Seventh Circuit never held that the "dominant nationality" exception is actually available as a defense against dismissal for lack of alienage jurisdiction. The exception was assumed available for purposes of argument since, like here, the plaintiff failed to submit enough evidence to warrant its adoption.