**SPRINGFIELD OIL SERVICES, INC., Plaintiff,**

v.

**Marvin MERMELSTEIN, Defendant.**

**No. 94 C 5774.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 12, 1996.

---

3. Antia has not claimed that the nature of the offense, an expired vehicle tag, would not support an arrest.

Steven H. Cohen, Jeremy Worden Hobbs, Krasnow, Sanberg & Cohen, Chicago, Illinois, Rachell Sirota, Howard Barry Sirota, Sirota & Sirota, New York City, for Plaintiff.

Albert Koretzky, Chicago, Illinois, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is plaintiff Springfield Oil Services, Inc.'s ("Springfield Oil") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) on its complaint against defendant Marvin Mermelstein ("Mermelstein"). Magistrate Judge Edward A. Bobrick submitted a Report and Recommendation ("Report") finding that Springfield Oil did not present sufficient facts to enable the magistrate judge to recommend granting summary judgment in Springfield Oil's favor. As set forth fully below, the court grants Springfield Oil's motion for summary judgment on the issue of liability,

but finds that an evidentiary hearing must be conducted on the issue of damages and attorney's fees.

## I. BACKGROUND

The facts are those set out in the Report and the parties' 12(m) and 12(n) statements. (Report at 2; Pl.'s Local Rule 12(m) Statement of Uncontested Facts; Def.'s Local Rule 12(n) Statement.) In short, Springfield Oil is seeking to recover from Mermelstein over $200,000 that Mermelstein promised to pay through six subscription notes in return for interests in two oil and gas limited partnerships: Arizona Associates ("Arizona"), an Oklahoma limited partnership, and Sanford Associates ("Sanford"), a Texas limited partnership. The three Arizona subscription notes became due December 31, 1990, 1991, and 1992, respectively; the three Sanford subscription notes became due December 31, 1991, 1992, and 1993, respectively.

Arizona and Sanford assigned all six notes to Springfield Oil in December 1989. Springfield Oil had performed drilling services for Arizona and Sanford pursuant to "turnkey contracts," and the assignments served to satisfy Arizona's and Sanford's debts to Springfield Oil. Mermelstein failed to pay the notes to Springfield Oil as they became due. Springfield Oil sued to recover the principal and interest due on the notes, as well as attorney's fees.

According to his Local Rule 12(n) statement, Mermelstein admits that he executed the subscription notes described above. (Def.'s Local Rule 12(n) Statement, Resp. to Pl.'s Local Rule 12(m) Statement ¶¶ 6, 14.) However, he claims that no diversity of citizenship between the parties exists; (id. ¶ 34); that the assignments of the notes to Springfield Oil were invalid for a variety of reasons; (id. ¶¶ 1–5, 7–17, 25, 31); and that the attorney's fees provision in the subscription notes is invalid. (Def.'s Local Rule 12(n) Statement ¶ 14.)

Magistrate Judge Bobrick found that this court properly has diversity jurisdiction over this case because Springfield Oil is a New York corporation with its primary place of business in New York, and thus is a New York resident, while Mermelstein is an Illinois resident.

Magistrate Judge Bobrick then found that several questions of fact still remained regarding whether Arizona and Sanford were limited partnerships, since Springfield Oil had not produced a limited partnership agreement signed by all of the parties, and to whom Arizona and Sanford intended to indorse the subscription notes—Springfield Oil, a New York corporation, or Springfield Oil, a Texas corporation.

Because these questions remained, the magistrate judge found that Springfield's submissions were not dispositive of the issues in the case, and that it would be inappropriate for the court to act as Springfield's advocate and develop its case further. As Magistrate Judge Bobrick noted,

> [the] seminal elements of [Springfield Oil's] case.... might be easily proved, but we cannot merely assume they are true without more from Springfield. It may well be that, in the end, this turns out to be a 'straightforward collection case,' but the present deficiencies in the record suggest it is not. Unless and until those deficiencies are cured, we cannot find this case appropriate for summary judgment.

(Report at 8.) Accordingly, the magistrate judge recommended denying Springfield Oil's motion for summary judgment.

## II. DISCUSSION

### A. Standard of Review

This court reviews *de novo* the findings of a magistrate judge. FED.R.CIV.P. 72(b); *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir. 1986). A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party presents a *prima facie* showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). All reasonable factual inferences must be viewed in favor of the nonmoving party. *Holland v. Jefferson Natl. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir. 1989).

## B. *Liability of Mermelstein on the subscription notes*

Springfield Oil considers this a simple case: Mermelstein executed the subscription notes, making him liable to Arizona and Sanford on the notes; Arizona and Sanford assigned the notes to Springfield Oil; the notes have become due; and therefore Mermelstein is liable to Springfield Oil on the notes. Though Mermelstein admits executing the subscription notes, he argues vehemently that he is not liable to Springfield Oil on the notes.

### 1. Diversity of citizenship

Mermelstein contends that this court does not have diversity jurisdiction over this case because both the original and amended complaints allege that Springfield Oil Services, Inc., is a Texas corporation, when in fact it is a New York corporation. Thus, according to Mermelstein, the entity that sued him is nonexistent. Springfield Oil counters that, at most, the complaint contains a mistaken allegation of jurisdiction, which can be amended freely pursuant to 28 U.S.C. § 1653.

■ The court agrees with Springfield Oil. Section 1653 is meant to address incorrect statements about jurisdiction that actually exists. *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830–31, 109 S.Ct. 2218, 2221–22, 104 L.Ed.2d 893 (1989). In the present case, diversity jurisdiction actual-

ly exists, since Springfield Oil is a New York resident, Mermelstein is an Illinois resident, and the case involves substantially more than the jurisdictional amount. *See* 28 U.S.C. § 1332. The complaint simply incorrectly states the state of incorporation of Springfield Oil. This is precisely the type of mistake for which section 1653 is intended to provide relief.

Accordingly, Springfield Oil is given leave to amend its amended complaint pursuant to 28 U.S.C. § 1653 to state correctly the allegation of jurisdiction. The court finds that diversity of citizenship between the parties in this case exists and that this case is properly before this court pursuant to 28 U.S.C. § 1332.

### 2. Validity of assignments of subscription notes

The remainder of Mermelstein's arguments against Springfield Oil's motion for summary judgment is predicated on his claim that no valid assignments of the subscription notes to Springfield Oil occurred.

#### a. *Sufficiency of limited partnership agreements and certificates*

Mermelstein contends that the assignments of the subscription notes were invalid because the notes were not supported by consideration. The purported consideration was Mermelstein's interest in valid limited partnerships. However, according to Mermelstein, Arizona and Sanford were not valid limited partnerships because the limited partnership agreements were not signed by all the limited partners.

■ While the magistrate judge found that Springfield Oil's submissions were insufficient to answer this question, Springfield Oil cured this deficiency in its objections to the Report. Springfield Oil submitted the affidavit of Jerry Karlik, vice-president of Harvest Oil Company ("Harvest Oil"), the limited partnerships' general partner. (Objections to Report Ex. B.) Attached to Mr. Karlik's affidavit are copies of Execution Pages and Powers of Attorney ("execution pages") signed by all of the limited partners in Arizona. (*Id.* ¶ 7, Group Ex. 2.) Included in the compilation of Arizona execution pages

is the execution page signed by Mermelstein. (*Id.* at SMM0078.)

Mr. Karlik states that prior to December 31, 1981, Harvest Oil received execution pages signed by each of the limited partners in Sanford; however, he cannot locate copies of the execution pages of two of the limited partners, neither of which is Mermelstein. (Objections to Report Ex. B ¶ 8.) The remainder of the Execution Pages are attached to his affidavit. (*Id.* Group Ex. 3.) Included in the compilation of Sanford execution pages is the execution page signed by Mermelstein. (*Id.* at SMM0032.)

Among other things, each execution page states: "[B]y his execution of this EXECUTION PAGE AND POWER OF ATTORNEY, [the undersigned] will become a limited partner under the terms and conditions specified in the [Limited Partnership] Agreement...." (*See, e.g.,* Objections to Report Ex. B Group Ex. 2 at SMM0078, Group Ex. 3 at SMM0032.) Each execution page also states:

> [B]y his execution hereof, the undersigned hereby irrevocably constitutes and appoints BENTLEY J. BLUM ... as his true and lawful attorney-in-fact, ... for him and in his name, place and stead and for his use and benefit ... to execute, acknowledge, swear to, certify, verify, deliver, record, file and publish as necessary:
>
> (1) The Certificate [of Limited Partnership]....

(*Id.*)

The court finds that the execution pages attached to Mr. Karlik's deposition show that all of the persons who signed the execution pages, including Mermelstein, thereby agreed to become limited partners in Arizona and Sanford, and granted Bentley J. Blum power of attorney to sign specified instruments on behalf of the partners, including the certificate of limited partnership required by the state. Mr. Blum, as attorney-in-fact

for the limited partners, signed and filed with the Oklahoma and Texas secretaries of state certificates of limited partnership for Arizona and Sanford, respectively. (Objections to Report Ex. C and D.)

The court finds that Harvest Oil and Mr. Blum, on behalf of the limited partners, substantially complied with the provisions of the Oklahoma and Texas limited partnership acts governing formation of limited partnerships. *See* OKLA.STAT.ANN. tit. 54 § 143(a); TEX.REV. CIV.STAT.ANN. art. 6132A § 3(a).[1] Because Oklahoma and Texas law simply require substantial compliance with these provisions for a limited partnership to exist, OKLA.STAT. ANN. tit. 54 § 143(b); TEX.REV.CIV.STAT.ANN. art. 6132A § 3(b), the court finds that Arizona and Sanford were validly formed limited partnerships.

### b. *Existence of entity to which assignments were made*

Because the subscription notes were assigned to "Springfield Oil Services, Inc., a Texas corporation," a nonexistent entity, Mermelstein claims that the assignments were invalid. Springfield Oil counters that, according to Oklahoma and Texas law, the assignment documents constituted "special indorsements," that is, indorsements that identify the persons to whom they make the notes payable. Springfield Oil argues that in the case of special indorsements, the identity of the person to whom a note is payable is determined by the intent of the person signing on behalf of the issuer of the note, even if the payee is identified by a name other than its own. Springfield Oil asserts that the signer of the notes, Mr. Karlik, intended to assign the notes to Springfield Oil, a New York corporation and plaintiff in this lawsuit.

Magistrate Judge Bobrick noted that the rules governing special indorsements apply to signatures on the instruments in question. *See* OKLA.STAT.ANN. tit. 12A § 3–204(a); TEX. BUS. & COM.CODE ANN. § 3.204(a). However, he found that Springfield Oil's arguments

---

1. The parties apparently agree that Oklahoma law applies to the issues arising out of the Arizona limited partnership, and Texas law applies to the issues arising out of the Sanford limited partnership. Each limited partnership's partnership agreement provides for this same result. (*See* Pl.'s Local Rule 12(m) Statement of Uncontested Facts Ex. A of Ex. A ¶ 11.4; Ex. A of Ex. G ¶ 11.4.) Therefore, the court will apply Oklahoma law to Arizona-related issues and Texas law to Sanford-related issues. The court notes that the two states' laws are virtually identical with respect to the issues before the court and lead to the same outcomes.

and evidentiary submissions to the court did not rely on the subscription notes themselves but on the separate assignment documents. Thus, he found that Springfield Oil did not show that the subscription notes were indorsed properly.

■ The court notes that the foregoing provisions consider a paper that is separate from but affixed to an instrument as part of the instrument for purposes of determining whether a signature is made on the instrument. *Id.* However, the court finds that Springfield Oil has not shown that the assignment documents were affixed to the subscription notes, and therefore that Arizona and Sanford, through Mr. Karlik, properly indorsed the subscription notes to Springfield Oil. This question of fact is immaterial, though, because the court finds it unnecessary to determine whether the subscription notes were indorsed properly. Under both Oklahoma and Texas law, the assignments constituted a transfer of the notes.

"An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." OKLA.STAT.ANN. tit. 12A § 3–203(a); TEX.BUS. & COM.CODE ANN. § 3.203(a). The "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument. . . ." OKLA.STAT.ANN. tit. 12A § 3–203(b); TEX.BUS. & COM.CODE ANN. § 3.203(b).

Thus, regardless of whether the assignments of the notes were negotiations in that Arizona and Sanford, through Mr. Karlik, properly indorsed the notes, *see* OKLA.STAT. ANN. tit. 12A § 3–201(b); TEX.BUS. & COM. CODE ANN. § 3.201(b), a valid transfer occurred. From the evidence submitted to the court, it is clear that the limited partnerships delivered the notes, with the assignment papers, to Springfield Oil, intending that Springfield Oil could collect on the notes. (*See* Pl.'s Local Rule 12(m) Statement of Uncontested Facts Ex. E, K, S, T; Objections to Report Ex. A at 34; *id.* Ex. B ¶¶ 4, 6.) Furthermore, Mr. Karlik made clear that he intended to assign the notes to Springfield Oil, a New York corporation and plaintiff in

this lawsuit. (*See* Objections to Report Ex. B ¶¶ 3–6.) Mermelstein has presented no evidence to the contrary.

Accordingly, the court finds that no question of fact exists regarding whether Arizona and Sanford assigned the subscription notes to Springfield Oil; they did.

### c. Assignment of notes without vote of limited partners

■ Mermelstein also raises the question of whether the assignment of the subscription notes and concomitant dissolution of the partnerships without a vote of the limited partners were proper. Mermelstein argues that the assignment and dissolution ignored the terms of the partnership agreements that require a vote by the partners to amend the partnership agreements and to dissolve the partnerships.

Mermelstein is correct that the limited partnership agreements gave to the limited partners the right to vote to amend the partnership agreements and to dissolve the partnerships. (*See* Pl.'s Local Rule 12(m) Statement of Uncontested Facts Ex. A of Ex. A. ¶¶ 5.4.3, 5.4.4, and 9.1.2.) However, the agreements provide that, in addition to occurring by vote, termination and dissolution of the partnerships occurs upon "an assignment by the Partnership for the benefit of creditors." (*Id.* ¶ 9.1.3.) The agreements also provide that the general partner has the right to "execute all instruments of any kind or character which may be necessary or appropriate in connection with the business of the Partnership[s]." (*Id.* ¶ 4.1.13.)

Read together, the latter two provisions gave the general partner the right to assign the subscription notes to the limited partnerships' creditor, Springfield Oil, upon which occurrence the partnerships were dissolved. Accordingly, the court finds that the assignment of the subscription notes and dissolution of the partnerships were accomplished in accordance with the partnership agreements.

### d. Consideration received by partnerships for assignment

Mermelstein argues that Springfield has not presented any evidence that it performed its turnkey contracts with Arizona and San-

ford or that any performance was worth the value of the subscription notes. He also contends that Springfield Oil has not presented evidence that either it, Harvest Oil, or anyone else performed a proper accounting upon dissolution of the partnerships, as required pursuant to the partnership agreements. The court agrees. However, the court finds that Springfield Oil was not required to present such evidence.

■ Mermelstein's argument is based on his affirmative defense that neither Arizona nor Sanford received consideration for the assignment of the subscription notes to Springfield Oil. (*See* Answer to First Am. Compl. at 14–15.) Mermelstein bears the burden of proof on this affirmative defense, and must present at least some evidence in support of it to defeat Springfield Oil's motion for summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir.1994).

■ Yet, Mermelstein has failed to present even an iota of evidence indicating that Springfield Oil did not perform its contracts with the partnerships or that a proper accounting was not done. Instead, he simply argues that there is no evidence that the partnerships received full value for assigning the subscription notes to Springfield Oil. If there is any dearth of evidence, it is because Mermelstein failed to meet his burden of coming forward with some evidence in response to Springfield Oil's motion for summary judgment.

### 3. Summary

In light of the foregoing analysis, the court finds that Springfield Oil has met its burden of showing that Arizona and Sanford validly assigned to it the subscription notes, that it has the right to enforce those notes, and that Mermelstein is obligated to pay the amounts due on those notes.

Accordingly, the court grants Springfield Oil's motion for summary judgment on the issue of liability. However, the court finds that questions of fact remain regarding the amounts that Mermelstein must pay on the notes and attorney's fees.

### C. Damages and attorney's fees

#### 1. Amounts due on notes

The amounts originally due on the notes are as follows: $20,000 on each of the Arizona notes, for a total of $60,000; and $40,000 on each of the Sanford notes, for a total of $120,000. (*See* Pl.'s Local Rule 12(m) Statement of Uncontested Facts Ex. B, C, D, H, I, and J.) Thus, if no other evidence had been presented by either party, Mermelstein would have owed Springfield Oil $180,000 plus applicable interest on the notes. However, the letters from Harvest Oil's "partnership coordinator" indicate that the Arizona notes were reduced by $3,520.93 and the Sanford notes by $5,690.00 through December 31, 1988. (Pl.'s 12(m) Statement Ex. S, T.) Springfield Oil acknowledges that these reductions were made and seeks the reduced value of the notes. (*Id.*; Pl.'s Mot. for Summ. J. ¶¶ 1, 2.) [2]

Since the amounts of the notes were reduced at one point, the question arises whether the reductions are correct and reflect the principal now due on the notes, or whether the notes should have been reduced further either prior or subsequent to December 31, 1988. Springfield Oil has not presented evidence indicating why the notes were reduced by those amounts or whether those reductions accurately reflect what Mermelstein now owes on the notes. Neither has Mermelstein presented evidence that he owes Springfield Oil a lesser amount than what Springfield Oil seeks.

Springfield Oil is asking the court to award it several hundred thousand dollars in summary fashion. The court declines to do so without being sure that the amount sought by Springfield accurately reflects what Mermelstein is obligated to pay under the sub-

---

**2.** Actually, Springfield Oil seeks slightly less than the total principal on the notes less the reductions set forth in the partnership coordinator's letters. Springfield Oil does not explain, and the court cannot determine the reason for, the discrepancies. However, the discrepancies are so small as to be of little import, and in any event, they are in Mermelstein's favor. Thus, they have no impact on the court's ruling.

scription notes. Therefore, the court finds it necessary to hold an evidentiary hearing on the issue of the amount due on the subscription notes.

## 2. Attorney's fees

Springfield Oil asks the court to award it attorney's fees in the amount of 15 percent of the principal and interest due on the subscription notes, pursuant to a provision in the notes providing for such fees. (*See* Pl.'s Local Rule 12(m) Statement of Uncontested Facts Ex. B, C, D, H, I, and J.) Mermelstein challenges this amount. He contends that the provision fixing the amount of attorney's fees at 15 percent of principal and interest due is arbitrary and unenforceable. He claims that it has nothing to do with just compensation and that no evidence exists that it is a reasonable forecast of just compensation.

Laws in both Texas and Oklahoma allow a person to recover attorney's fees on a claim to recover on instruments such as the subscription notes at issue in this case. *See* OKLA.STAT.ANN. tit. 12 § 936; TEX.CIV.PRAC. & REM.CODE ANN. § 38.001(1). Both states' laws also allow parties to provide for attorney's fees in a specified amount based on the principal and interest sought to be recovered on a note. *See Security Nat'l Bank of Enid v. Bonnett,* 623 P.2d 1061, 1063–64 (Okla.Ct. App.1980); *F.R. Hernandez Constr. & Supply Co., Inc. v. Nat'l Bank of Commerce of Brownsville,* 578 S.W.2d 675, 676–77 (Tex. 1979). However, both states require an award of attorney's fees to be reasonable. *See id.*

In *Hernandez,* the losing plaintiff had pleaded in its answer that 15 percent of the principal and interest due on the note at issue in that case would be an unreasonable amount and not representative of the work actually involved in collecting the note. *Hernandez,* 578 S.W.2d at 677. The court held a non-jury trial and a subsequent evidentiary hearing solely on the issue of the reasonableness of the attorney's fees provided for in the note. *Id.* at 677–678. The trial court ultimately lowered the amount of attorney's fees that the prevailing party was permitted to recover; the court of appeals reversed; and

the Texas Supreme Court reversed the court of appeals and affirmed the trial court's judgment. *Id.* at 678.

The supreme court stated that Texas courts

> do not regard agreements to pay attorney's fees based on a percentage of the unpaid balance and interest on a promissory note as absolute promises to pay the contractual amount, but as contracts to indemnify the holder of the note for attorney's expenses actually incurred in collecting the principal and interest on the note.

*Hernandez,* 578 S.W.2d at 676 (citations omitted). Therefore, "the obligor of the note can challenge the reasonableness of contractual attorney's fees, . . . . [and] the holder of the note is not entitled to recover the full contractual amount if the obligor shows that the fee should be limited to an amount that is reasonable under the circumstances." *Id.*

Similarly, *Bonnett* involved a lawsuit to recover on a promissory note that provided for the payment of attorney's fees of 10 percent of the unpaid principal on the note in the event that the note was turned over to an attorney for collection upon default. *Bonnett,* 623 P.2d at 1062. The trial court found that it was not bound by the terms of the note but instead was obligated to fix a reasonable attorney's fee. *Id.* Affirming the trial court, the court of appeals stated that

> parties are free to contract for a reasonable attorney's fee, but if the fee is challenged as excessive or exorbitant, the trial court should take evidence as to the reasonableness of the fee and has the power under [a statute analogous to OKLA.STAT. ANN. tit. 12 § 936] to fix an attorney's fee that is reasonable and commensurate with the work performed by the attorney.

*Id.* at 1064.

In the present case, Mermelstein has challenged the reasonability of the 15 percent attorney's fees provision. Since he has mounted this challenge, the court will not automatically award Springfield Oil attorney's fees in the amount of 15 percent of the principal and interest due on the subscription notes. In accordance with the laws of Oklahoma and Texas, the court is required to

make a factual finding regarding the reasonableness of attorney's fees in this case. Therefore, the court will hold an evidentiary hearing on reasonable attorney's fees.

### III. *CONCLUSION*

For the foregoing reasons, defendant's motion for summary judgment is granted on the issue of liability. The court will hold an evidentiary hearing on the issues of damages and attorney's fees.